IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
ABERDEEN DIVISION

PEGGY SHUMPERT, individually and as the     PLAINTIFFS
Administrator of the Estate of Antwun Shumpert, Sr.,
THE ESTATE OF ANTWUN SHUMPERT, SR., and
CHARLES FOSTER

V.     CIVIL ACTION NO. 1:16-CV-120-SA-DAS

THE CITY OF TUPELO, MISSISSIPPI,
MAYOR JASON SHELTON, CHIEF BART AGUIRRE, and
OFFICER TYLER COOK     DEFENDANTS

MEMORANDUM OPINION

In their Second Amended Complaint [59], the Plaintiffs assert a number of federal and state law claims against the City of Tupelo Mississippi, Jason Shelton, the mayor of Tupelo in his official capacity, Bart Aguirre, the Chief of the Tupelo Police Department in his official capacity, and Tupelo Police Officer Tyler Cook in both his official and individual capacities.[1] The City filed a Motion for Summary Judgment [188], requesting that the Court dismiss all of the Plaintiffs' claims against them. The Plaintiffs filed a Response [193], and the City filed a Reply [199] making these issues ripe for review.

*I. Factual and Procedural Background*[2]

On the evening of June 18, 2016, the Tupelo Police Department Special Operations Unit was conducting surveillance of the Townhouse Motel due to complaints of drug activity. One of

---

[1] The official capacity suits against Shelton, Aguirre, and Cook are suits against the City of Tupelo as the real party in interest here, and are thus duplicative of the Plaintiffs' suit against the City. *See Goodman v. Harris Cty.*, 571 F.3d 388, 395 (5th Cir. 2009) (stating "an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity. It is *not* a suit against the official personally, for the real party in interest is the entity.") (citing *Kentucky v. Graham*, 473 U.S. 159, 166, 105 S. Ct. 3099, 87 L. Ed. 2d 114 (1985) (citation omitted)). The Plaintiffs acknowledge this in their summary judgment response. *See* [193]. The Court will proceed on this basis and refer to all of these municipal Defendants collectively as the "City." The Plaintiffs' suit against Cook individually is the subject of a separate summary judgment motion that the Court will not address in this Memorandum Opinion.

[2] Factual controversies are resolved in favor of the Plaintiff when both parties submitted evidence of contradictory facts. *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc).

the officers on the surveillance team watched a vehicle enter the motel parking lot without stopping at the office and then exit about three minutes later. Suspecting that the occupants of the vehicle were involved in narcotics activity, the surveilling officer notified the team that the vehicle was now headed north on South Gloster Street.

Another officer, Joseph Senter, was in his unmarked patrol car near that location and started following the suspect vehicle. After observing the vehicle make a right turn without signaling, Senter activated his blue lights and attempted to initiate a traffic stop. Senter radioed that the vehicle was "slow rolling" him and continued to follow. The vehicle went through a three-way stop without stopping and made a left hand turn on Harrison Street. Then, the vehicle then stopped and the driver, Antwun "Ronnie" Shumpert, exited the vehicle and ran into a nearby neighborhood. The passenger, Charles Foster, remained with the vehicle. Senter gave chase on foot, identifying Shumpert over the radio as black male wearing shorts and a maroon jersey with the number five on it.

Officer Cook was in the area, parked his patrol vehicle and set out on foot with his K9, Alec, in an effort to locate Shumpert. Alec led Cook to the rear of a nearby house where Cook observed a hand trying to hold the door to the crawlspace under the house closed from the inside. The area was dark, and the only light illuminating the area was the light attached to Cook's drawn gun. Cook opened the crawlspace door and announced, "Tupelo Police Department, show me your hands, come out from under the house, I have a dog, and he will bite." At this point, Shumpert attempted to flee further under the house. Cook gave the bite command to Alec and released him sending him under the house through the crawlspace door. K9 Alec engaged Shumpert, and Shumpert began punching the dog and slamming the dog's head up against the floor joists above. Shumpert fought Alec off, but Alec held on to Shumpert's jersey. Still engaged in a struggle, Alec

and Shumpert came out from under the house, and in the process, Shumpert's maroon jersey came off. As he exited the crawlspace, Shumpert charged and tackled Cook with a football style tackle, with Shumpert ending up on top of Cook punching him. Cook attempted to strike Shumpert with his fist and gun. According to Cook, as he started to lose consciousness, he shot Shumpert four times in succession.

Several officers were in the area and heard the gunshots. Officers Senter and Adam Merrill were the first to arrive at the scene. Senter handcuffed Shumpert and requested an ambulance. Emergency medical personnel arrived within approximately five minutes, administered aid to Shumpert, and then transported him to the hospital. Cook was also transported to the hospital where he was treated for bruising to his face.

After Shumpert fled the scene of the traffic stop and Senter gave chase, Foster remained with the vehicle, and was standing by the vehicle with his hands in the air when Officer Jonathan Johnson arrived, arrested him and placed him the back of a police vehicle. Although Shumpert was driving, the car belonged to Foster.

After approximately forty-five minutes to one hour, the Mississippi Highway Patrol and the Mississippi Bureau of Investigation arrived, and the Tupelo Police Department turned the investigation, both scenes, and Foster over to them.

Shumpert ultimately died from his wounds.

*II. Standard of Review*

Federal Rule of Civil Procedure 56 governs summary judgment. Summary judgment is warranted when the evidence reveals no genuine dispute regarding any material fact, and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a). The rule "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party

who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986).

In reviewing the evidence, factual controversies are to be resolved in favor of the non-movant, "but only when . . . both parties have submitted evidence of contradictory facts." *Little*, 37 F.3d at 1075. When such contradictory facts exist, the Court may "not make credibility determinations or weigh the evidence." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150, 120 S. Ct. 2097, 147 L. Ed. 2d 105 (2000).

The moving party "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex*, 477 U.S. at 323, 106 S. Ct. 2548. The nonmoving party must then "go beyond the pleadings" and "designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* at 324, 106 S. Ct. 2548 (citation omitted).

*III. 42 U.S.C. § 1983 Municipal Liability*

The Plaintiffs assert two theories for municipal liability against the City under 42 U.S.C. § 1983: the first related to the City's training policies, and the second related to Foster's detention.[3]

A municipality may only be held liable under §1983 when the violation of a plaintiff's federally protected right is attributable to the enforcement of a municipal policy or pattern. *Hall v. Robinson*, 618 F. App'x 759, 763 (5th Cir. 2015) (citing *Monell v. Dep't of Soc. Servs. of City of N.Y.*, 436 U.S. 658, 691, 98 S. Ct. 2018, 56 L. Ed. 2d 611 (1978)). In order to sustain a claim, the Plaintiffs must demonstrate that their constitutional rights were violated, and that the violation is

---

[3] Although the Plaintiffs asserted numerous "causes of action" in their amended complaint, the Plaintiffs focused and clarified the scope of their claims against the City to these enumerated claims through their summary judgment briefing. *See* [197, 198].

4

attributable to the enforcement of a City policy or practice. *Saenz v. City of El Paso*, 637 F. App'x 828, 831 (5th Cir. 2016) (citing *Valle v. City of Houston*, 613 F.3d 536, 541 (5th Cir. 2010)). If they establish a constitutional violation, the Plaintiffs may show that the violation was the result of a City policy or practice in a number of ways. Generally, municipal liability may be based upon a formally promulgated policy, a well-settled custom or practice, a final decision by a municipal policymaker, or deliberately indifferent training or supervision. *Valle*, 613 F.3d at 541-42 (citing *Piotrowski v. City of Houston*, 237 F.3d 567, 578 (5th Cir. 2001)).

Under §1983, a city is not liable simply because it employed a constitutional wrongdoer. *Zarnow v. City of Wichita Falls, Tex.*, 614 F.3d 161, 167 (5th Cir. 2010) (stating "a municipality may not be subject to liability merely for employing a tortfeasor"). In other words, §1983 municipal liability may not be based on *respondeat superior*. *Zarnow*, 614 F.3d at 167 (citing *Bd. of Cnty. Comm'rs of Bryan Cnty., Okla. v. Brown*, 520 U.S. 397, 415, 117 S. Ct. 1382, 137 L. Ed. 2d 626 (1997)).

*A. Failure to Train*

The Plaintiffs argue that the City failed to adequately train Cook in the use of force, specifically the use of the K9 Alec, and that this failure directly caused the unconstitutional use of excessive force against Shumpert.

Assuming, for argument's sake, that Cook violated Shumpert's constitutional right[4] to be free from the use of excessive force, in order to succeed on their failure to train claim the Plaintiffs must show three things: (1) the training procedures of the City's policymaker were inadequate, (2) the City's policymaker was deliberately indifferent in adopting the training policy, and (3) the

---

[4] The City does not concede that Cook violated any of Shumpert's constitutional rights. However, the vast majority of both Parties' briefing and arguments are dedicated to the failure to train issue so it is here that the Court focuses its inquiry.

inadequate training policy directly caused the plaintiff's injury. *Conner v. Travis Cty.*, 209 F.3d 794, 796–97 (5th Cir. 2000) (citing *Baker v. Putnal*, 75 F.3d 190, 200 (5th Cir. 1996)). Because "[a] municipality's culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train," to establish municipal liability under §1983 a plaintiff must show that the failure to train was "the *moving force* behind a constitutional violation." *Saenz*, 637 F. App'x at 831-32 (citing *Connick v. Thompson*, 563 U.S. 51, 61, 131 S. Ct. 1350, 179 L. Ed. 2d 417 (2011); *Kitchen v. Dallas Cty.*, 759 F.3d 468, 476–77 (5th Cir. 2014)) (emphasis added). *Saenz*, 637 F. App'x at 832 (quoting *Connick,* 563 U.S. at 61, 131 S. Ct. 1350). The Plaintiffs can establish that the policy was the "moving force" by demonstrating that, "in light of the duties assigned [. . .], the need for more or different training is obvious, and the inadequacy so likely to result in violations of constitutional rights, that the policymakers of the city can reasonably be said to have been deliberately indifferent to the need." *Conner*, 209 F.3d 797 (citing *City of Canton v. Harris*, 489 U.S. 378, 390, 109 S. Ct. 1197, 103 L. Ed. 2d 412 (1989); *Benavides v. County of Wilson*, 955 F.2d 968, 972 (5th Cir. 1992)).

In this case, the Plaintiffs agree that the Tupelo Police Department training policy in question is facially adequate. The Plaintiffs argue, however, that Aguirre failed to follow the policy and his alleged departure rises to the level of deliberate indifference.

The Tupelo Police Department's Canine Operations Policy states that in order to be qualified for a canine handler position, applicants must have at least five years of uniform patrol experience, with three years of that patrol experience with the Tupelo Police Department. Cook was hired on October 7, 2012 as a regular patrol officer. On March 10, 2014, Aguirre transferred Cook from regular patrol to K9 patrol, and Cook had less than two years of uniform patrol

6

experience with the Tupelo Police Department.[5] When questioned about the premature transfer, Aguirre stated that he approved Cook for the transfer because he had prior K9 experience while in the military.

The Plaintiffs argue that Cook's premature transfer was deliberately indifferent and directly caused the alleged violation of Shumpert's constitutional rights. Importantly, the Plaintiffs do not offer any evidence or argument that the actual training that Cook received, in particular regarding K9 handling, was objectively or subjectively inadequate. The City argues that Cook was adequately, if not highly, trained and that his service and training record is replete with evidence of extensive K9 training.[6]

"Deliberate indifference is more than mere negligence." *Conner*, 209 F.3d at 796–97 (citing *Rhyne v. Henderson County*, 973 F.2d 386, 392 (5th Cir. 1992) ("While the municipal policy-maker's failure to adopt a precaution can be the basis for § 1983 liability, such omission must amount to an intentional choice, not merely an unintentionally negligent oversight."); *see also Doe v. Taylor Independent Sch. Dist.*, 15 F.3d 443, 453 n. 7 (5th Cir. 1994) (distinguishing "deliberate indifference" from "gross negligence" by noting that the former is a heightened degree of negligence, [whereas] the latter is a "lesser form of intent") (internal quotations omitted)).

Further, deliberate indifference normally requires "at least a pattern of similar incidents in which the citizens were injured." *Peterson v. City of Fort Worth, Tex.*, 588 F.3d 838, 849 (5th Cir. 2009) (citing *Estate of Davis ex rel. McCully v. City of North Richmond Hills*, 406 F.3d 375, 383, 386 (5th Cir. 2005)). Notably the Plaintiffs' claim is based only on a single incident. Although, "under certain circumstances, §1983 liability can attach for a single decision not to train an

---

[5] At the time of the incident, Cook did have more than three years of uniform patrol experience with the Tupelo Police Department.
[6] Cook's training file is a part of the record in this case and it does contain numerous K9-related training certificates and certifications.

7

individual officer," "a showing of deliberate indifference generally requires a showing of more than a single instance of the lack of training or supervision causing a violation of constitutional rights." *See Peterson*, 588 F.3d at 849; *Clyce v. Hunt Cty., Tex.*, 515 F. App'x 319, 324 (5th Cir. 2013); *see also Conner*, 209 F.3d at 797. A "narrow" single incident exception has applied when the court finds a complete failure to train, not just a failure to train in "one limited area." *See Peterson*, 588 F.3d at 849 (citing *Estate of Davis ex rel. McCully v. City of North Richmond Hills*, 406 F.3d 375, 383, 386 (5th Cir. 2005) (internal citations omitted)).

A failure to adequately enforce an otherwise adequate policy is not, as the Plaintiffs argue, *per se* deliberate indifference. As this Court recently explained,

> [A] city's failure to adequately enforce existing policy does not establish that it has adopted a policy or custom in favor of the exact opposite of that policy. It is, in the court's view, much more likely to indicate that the city may intend that its policy be followed but that it has failed to be sufficiently diligent in ensuring that such is the case. Clearly, allegations that a city adopted beneficial policies but has failed to follow them sound in simple *negligence*, not the sort of "deliberate indifference" which the Supreme Court has required to be shown in cases where municipalities are sought to be held liable for the acts of their employees based upon allegations of inadequate training, supervision or hiring.

*Cooper v. Brown*, 156 F. Supp. 3d 818, 830–31 (N.D. Miss.), *aff'd in part, appeal dismissed in part*, 844 F.3d 517 (5th Cir. 2016) (citing *City of Canton*, 489 U.S. at 390, 109 S. Ct. at 1205) (citations omitted)).

In light of the fact that Aguirre considered Cook's previous military K9 experience when transferring him, that Cook arguably possessed the requisite experience at the time of the incident, and that Cook did receive at least some, if not substantial, training in K9 handling, Aguirre's decision to transfer Cook did not rise to the requisite level of deliberate indifference. It was not

8

"*obvious*" "that the risk of serious injury was a 'highly predictable consequence' of any failure to train." *Peterson*, 588 F.3d at 849; *Estate of Davis*, 406 F.3d at 383, 386.

Put simply, the facts of this case fall far short of the stringent "deliberate indifference" standard required. *See Peterson*, 588 F.3d at 849; *Clyce*, 515 F. App'x at 324; *Conner*, 209 F.3d at 797. It is also clear, based on the undisputed evidence in the record, that there was no "complete failure to train" in this case, which is required for application of the single incident exception. *See Peterson*, 588 F.3d at 849; *Estate of Davis*, 406 F.3d at 383, 386.

*B. Fourth Amendment – Foster's Detention*

Next, the Plaintiffs allege that the Tupelo Police Department violated Foster's right to be free from unreasonable search and seizure protected by the Fourth Amendment, and that this violation is attributable to the enforcement of a City policy. The City argues that Foster's constitutional rights were not violated and that even if they were, the Plaintiffs have failed to identify any policy or custom to which the alleged violation is attributable.

Although the Plaintiffs recognize in their briefing that "The City is entitled to insist upon specific identification of the City policy through which the Plaintiff seeks to establish liability. *Piotrowski v. City of Houston*, 237 F.3d 567, 578-580 (5th Cir. 2001)," the Plaintiffs never identify such a policy through which they seek to establish liability relative to Foster. Strangely, the Plaintiffs instead state, "Importantly, the City of Tupelo has produced no policy or testimony regarding the propriety of the search and detention of Foster" and then argue that this is somehow a jury question without citing any relevant precedent.

Because the Plaintiffs wholly failed to allege or identify any policy that could provide a basis for municipal liability against the City, their claim fails and the Court need not reach the

9

issue of whether Foster's constitutional rights were violated here. *See Hall*, 618 F. App'x at 763 (citing *Monell*, 436 U.S. at 691, 98 S. Ct. 2018).[7]

## IV. State Law Claims – Foster, Shumpert

Finally, the Plaintiffs allege several state law claims against the City on behalf of Shumpert and Foster including civil assault and battery, general negligence, and intentional and negligent infliction of emotional distress. The City asserts exemption from liability under Mississippi Code §11-46-9(1)(c). The Mississippi Tort Claims Act provides a qualified waiver of sovereign immunity under Mississippi law for certain tortious acts by municipal employees. The Act does not waive sovereign immunity for:

> any act or omission of an employee of a governmental entity engaged in the performance or execution of duties or activities relating to police or fire protection unless the employee acted in reckless disregard of the safety and well-being of any person not engaged in criminal activity at the time of injury.

MISS. CODE. ANN. § 11-46-9(1)(c).

As to the claims related to Shumpert, the City argues that it is exempt from liability because Shumpert was actively engaged in criminal activity at the relevant time. The Plaintiffs do not respond to this argument but instead argue that Cook acted with reckless disregard. Under the plain language of the statute, whether Cook acted with reckless disregard is irrelevant because, as the Plaintiffs at least tacitly agree, Shumpert was engaged in criminal activity. *See id.*; *see also Hancock v. City of Greenwood, Miss.*, 942 F. Supp. 2d 624, 626 (N.D. Miss. 2013) (citing *Chapman v. City of Quitman*, 954 So. 2d 468, 474 (Miss. Ct. App. 2007); *Williams v. City of Cleveland, Miss.*, No. 2:10-CV-215-SA, 2012 WL 3614418, at *20 (N.D. Miss. Aug. 21, 2012),

---

[7] Although the Plaintiffs make factual allegations against Tupelo Police Officer Senter, Senter is not a party to this suit in any capacity and as noted above, "§1983 municipal liability may not be based on *respondeat superior*." *Zarnow*, 614 F.3d at 167 (citing *Brown*, 520 U.S. at 415, 117 S. Ct. 1382).

*aff'd,* 736 F.3d 684 (5th Cir. 2013)); *City of Jackson v. Powell*, 917 So. 2d 59, 69–70 (Miss. 2005). The application of this Section of the Mississippi Tort Claims Act is therefore straightforward to these facts and the City is exempt from liability.

As to the claims related to Foster, the Plaintiffs argue that Tupelo Police arrested, searched, and detained Foster for an unreasonable amount of time, and that they kept him handcuffed in a hot police car in reckless disregard for his safety and well-being.

After Officer Senter began pursuing Shumpert on foot, Foster remained with the car and had his hands up when the second officer, Johnson, arrived. Johnson handcuffed Foster and placed him in the back of Senter's patrol car. Foster was moved to another patrol car at least once before he was transferred into the custody of the Mississippi Highway Patrol.[8] In all, Foster remained at the scene of the stop for somewhere between forty-five minutes and one hour. While at the scene Foster complained that his handcuffs were too tight and that it was so hot in the patrol car that he could not breathe. According to Foster, the officers on the scene only opened the patrol car window a small crack so that he could breathe.

As noted above, the City can only be liable for its officers' conduct if those officers acted with reckless disregard of Foster's safety and well-being. Although undefined in the Act, the Mississippi Supreme Court has explained the reckless disregard standard as "a higher standard than gross negligence, and it embraces willful or wanton conduct which requires knowingly and intentionally doing a thing or wrongful act." *City of Jackson v. Shavers*, 97 So. 3d 686, 688 (Miss. 2012) (citing *Phillips v. Miss. Dep't of Pub. Safety*, 978 So. 2d 656, 661 (Miss. 2008)). "It typically involves a conscious indifference to consequences, and almost a willingness that harm should

---

[8] The Plaintiffs also argue that Foster was detained for five to six hours, and was strip and cavity searched. It is undisputed that this detention and search took place after Foster was transferred to Mississippi Highway Patrol and Lee County custody, and those entities are not named in this suit.

11

follow." *Id.* (citing *Maye v. Pearl River County*, 758 So. 2d 391, 394 (Miss. 1999)). "Reckless disregard is found where there is a deliberate disregard of an unreasonable risk and a high probability of harm." *Id.* (citing *City of Laurel v. Williams*, 21 So. 3d 1170, 1175 (Miss. 2009) (quoting *Maldonado v. Kelly*, 768 So. 2d 906, 910–11 (Miss. 2000)). The Mississippi Supreme Court went on to explain that the standard by which officers' actions are judged is an "objective" one based on the "totality of the circumstances." *Phillips*, 978 So. 2d at 66; *City of Ellisville v. Richardson*, 913 So. 2d 973, 978–79 (Miss. 2005).

The facts of this case, as alleged by the Plaintiffs, do not rise to the requisite level of reckless disregard, nor have the Plaintiffs brought forth any evidence of "an unreasonable risk and high probability of harm." *Shavers*, 97 So. 3d at 688: *compare City of Jackson v. Gardner*, 108 So. 3d 927, 929 (Miss. 2013) (finding that officer's actions in forcing handcuffed arrestee to sit down, which resulted in arrestee breaking his leg, did not rise to the level of reckless disregard) *and Bradley v. McAllister*, 929 So. 2d 377, 380 (Miss. Ct. App. 2006) (finding police officer did not act with reckless disregard when he elected not to adjust handcuffs he had placed on arrestee after arrestee complained) *with City of Jackson v. Calcote*, 910 So. 2d 1103, 1111 (Miss. Ct. App. 2005) (finding officer's actions of shoving arrestee's face into concrete floor, pressing his fingers into arrestee's eyes, and rolling arrestee's face across concrete floor were willful and wanton and in reckless disregard).

In light of the particular facts presented in this case, and applying the relevant substantive law and precedents, the Court finds that the allegations in this case do not rise to the level of reckless disregard, and the City is exempt from liability under the police protections exemption of the Mississippi Tort Claims Act.

*V. Conclusion*

Because the Plaintiffs failed to establish several essential elements of their claims against the City, as fully explained above, the City's Motion for Summary Judgment [188] on all of the Plaintiffs' claims against it is GRANTED. The Plaintiffs' claims against the City of Tupelo, as well as their official capacity claims against Shelton, Aguirre, and Cook are DISMISSED with prejudice.

SO ORDERED, this the 6th day of November, 2017.

/s/ Sharion Aycock
UNITED STATES DISTRICT JUDGE