IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
ABERDEEN DIVISION

PEGGY SHUMPERT, individually and as the                                           PLAINTIFFS
Administrator of the Estate of Antwun Shumpert, Sr.,
THE ESTATE OF ANTWUN SHUMPERT, SR., and
CHARLES FOSTER

V.                                                          CIVIL ACTION NO. 1:16-CV-120-SA-DAS

CITY OF TUPELO, MISSISSIPPI,
MAYOR JASON SHELTON,
CHIEF BART AGUIRRE, and
OFFICER TYLER COOK                                                                DEFENDANTS

MEMORANDUM OPINION

In their Second Amended Complaint [59], the Plaintiffs assert a federal claim for excessive force under 42 U.S.C. § 1983 and the Fourth Amendment to the United States Constitution against Tupelo Police Officer Tyler Cook individually.[1] The Plaintiffs also ask the Court to exercise supplemental jurisdiction over a number of state law claims. Cook filed a Motion for Summary Judgment [190], requesting that the Court dismiss all of the Plaintiffs' claims against him. The Plaintiffs filed a Response [191], and Cook filed a Reply [197] making these issues ripe for review.

*Factual and Procedural Background*

On the evening of June 18, 2016, the Tupelo Police Department Special Operations Unit was conducting surveillance of the Townhouse Motel due to complaints of drug activity. One of the surveillance team members watched a vehicle enter the motel parking lot without stopping at the office and then exit about three minutes later. Suspecting that the occupants of the vehicle were

---

[1] In their summary judgment response the Plaintiffs explicitly waive their official capacity and due process/medical care claims against Cook. *See* Response [191]. The Plaintiffs' other official capacity claims and claims against the City are the subject of a separate summary judgment motion that the Court will not address here.

involved in narcotics activity, the surveilling officer notified the team that the vehicle was now headed north on South Gloster Street.

Another officer, Joseph Senter, was in his unmarked patrol car near that location and started following the suspect vehicle. After observing the vehicle make a right turn without signaling, Senter activated his blue lights and attempted to initiate a traffic stop.[2] Senter radioed that the vehicle was "slow rolling" him and continued to follow. The vehicle went through a three-way stop without stopping and made a left hand turn on Harrison Street. Then, the vehicle stopped and the driver, Antwun "Ronnie" Shumpert, exited the vehicle and ran into a nearby neighborhood. The passenger, Charles Foster, remained with the vehicle. Senter gave chase on foot, identifying Shumpert over the radio as a black male wearing shorts and a maroon jersey with the number five on it.

Officer Cook was in the area, parked his patrol vehicle and set out on foot with his K9, Alec, in an effort to locate Shumpert. Alec led Cook to the rear of a nearby house where Cook observed a hand trying to hold the door to the crawlspace under the house closed from the inside. The area was dark, and the only light illuminating the area was the light attached to Cook's drawn gun. Cook opened the crawlspace door and announced, "Tupelo Police Department, show me your hands, come out from under the house, I have a dog, and he will bite." At this point Shumpert attempted to flee further under the house. Cook gave the bite command to Alec and released him sending him under the house through the crawlspace door. K9 Alec engaged Shumpert, and Shumpert began punching the dog and slamming the dog's head up against the floor joists above. Shumpert fought Alec off, but Alec held on to Shumpert's jersey. Still engaged in a struggle, Alec and Shumpert came out from under the house, and in the process, Shumpert's maroon jersey came

---

[2] According to Senter, he first noticed that the vehicle's tag light was out. Foster submitted an affidavit averring that the tag light was working and that it was damaged when the vehicle was later towed from the scene.

off. As he exited the crawlspace, Shumpert charged and tackled Cook with a football style tackle, with Shumpert ending up on top of Cook punching him. Cook attempted to strike back at Shumpert with his fist and gun. Cook started to lose consciousness, and as he did, he shot Shumpert four times in succession, twice in the chest, once in the stomach, and once in the groin.

Several officers were in the area and heard the gunshots. Officers Senter and Adam Merrill were the first to arrive at the scene. Senter handcuffed Shumpert and requested an ambulance. Emergency medical personnel arrived within approximately five minutes, administered aid to Shumpert, and then transported him to the hospital. Cook was also transported to the hospital where he was treated for bruising to his face. Shumpert ultimately died from his wounds.

*Standard of Review*

Federal Rule of Civil Procedure 56 governs summary judgment. Summary judgment is warranted when the evidence reveals no genuine dispute regarding any material fact, and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a). The rule "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986).

In reviewing the evidence, factual controversies are to be resolved in favor of the non-movant, "but only when . . . both parties have submitted evidence of contradictory facts." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc). When such contradictory facts exist, the Court may "not make credibility determinations or weigh the evidence." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150, 120 S. Ct. 2097, 147 L. Ed. 2d 105 (2000).

The moving party "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex*, 477 U.S. at 323, 106 S. Ct. 2548. The nonmoving party must then "go beyond the pleadings" and "designate 'specific facts showing that there is a genuine issue for trial.'" *Id*. at 324, 106 S. Ct. 2548 (citation omitted).

Because Cook asserts that he is entitled to the protection of qualified immunity in this case the Court notes, "A good-faith assertion of qualified immunity alters the usual summary judgment burden of proof, shifting it to the plaintiff to show that the defense is not available." *Orr v. Copeland*, 844 F.3d 484, 490 (5th Cir. 2016) (quoting *Cass v. City of Abilene*, 814 F.3d 721, 728 (5th Cir. 2016) (internal quotation marks omitted)).[3] A plaintiff "must rebut the defense by establishing that the officer's allegedly wrongful conduct violated clearly established law." *Wolfe v. Meziere*, 566 F. App'x 353, 354 (5th Cir. 2014) (citing *Michalik v. Hermann*, 422 F.3d 252, 262 (5th Cir. 2005); *Bazan ex rel. Bazan v. Hidalgo Cnty.*, 246 F.3d 481, 489 (5th Cir. 2001)). The Plaintiff "cannot rest on conclusory allegations and assertions but must demonstrate genuine issues of material fact regarding the reasonableness of the officer's conduct." *Id*.

*Preliminary Issue: Evidence*

Titus Smith, a resident of San Antonio, Texas, is Shumpert's brother-in-law. The Plaintiffs produced an affidavit from Smith that they argue creates several material factual disputes. In the affidavit, Smith recounts an anonymous telephone call he received early in the morning on June

---

[3] The Plaintiffs briefly argue that Cook failed to raise the affirmative defense of qualified immunity. The Plaintiffs cite to Local Civil Rule 7(b)(2)(A) which states, "Affirmative defenses must be raised by motion. Although the affirmative defenses may be enumerated in the answer, the court will not recognize a motion included within the body of the answer, but only those raised by a separate filing." L. U. Civ. R. 7(b)(2)(A). Although Cook does not specifically mention qualified immunity in his motion document [190], he devotes many pages of the accompanying memorandum [187] to the issue. Clearly, the Plaintiffs and the Court were on notice that qualified immunity is the primary substantive issue in this case at summary judgment, and both parties fully briefed the issue. The Court finds that Cook substantially complied with the requirements of the Local Rule.

19, 2016. According to Smith, the anonymous male caller related a very different version of the events involving Shumpert and Cook. Smith made attempts to identify the caller but was unable to.

The Defendants object to this affidavit arguing that it is hearsay and inadmissible for consideration here under the Federal Rules of Evidence and Federal Rule of Civil Procedure 56(c). Rule 56 states, in relevant part:

> (2) A party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence. [. . .]
> (4) An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated.

FED. R. CIV. P. 56 (c)(2)(4). The Plaintiffs do not dispute that the affidavit is hearsay, but argue that the affidavit is admissible under the present sense impression and excited utterance exceptions to the hearsay rule. *See* FED. R. EVID. 803(1-2). The relevant text of Rule 803 states:

> The following are not excluded by the rule against hearsay, regardless of whether the declarant is available as a witness:
> (1) Present Sense Impression. A statement describing or explaining an event or condition, made while or immediately after the declarant perceived it.
> (2) Excited Utterance. A statement relating to a startling event or condition, made while the declarant was under the stress of excitement that it caused.

FED. R. EVID. 803.

Although the affidavit is allegedly based on Smith's personal knowledge of the call he received, there is no indication that the account of the anonymous caller is based on the caller's personal knowledge. Thus, under the plain language of Rule 803(1) the statement does not fall under the exception because there is no indication that the declarant perceived the events described. In addition, there is no indication that the declarant made the statements close in time to the events.

5

The basis for the present sense impression exception "relies on the contemporaneousness of the event under consideration and the statement describing that event. Because the two occur almost simultaneously, there is almost no 'likelihood of [a] deliberate or conscious misrepresentation.'" *United States v. Polidore*, 690 F.3d 705, 720 (5th Cir. 2012) (citing *Rock v. Huffco Gas & Oil Co.*, 922 F.2d 272, 280 (5th Cir. 1991) (citations omitted)). According to Smith, he received the call early in the morning of June 19, before daybreak. Officer Senter initiated the traffic stop around 9:30 pm on the 18th making the length of time between the events and the call, hours even by the most generous accounting.

The lack of evidence of personal knowledge by the anonymous caller similarly undermines the potential admissibility of the statement under the plain language of Rule 803(2). There is simply no indication that the anonymous caller personally observed the events, or that the he remained "under the stress of the excitement that it caused" at the time he called Smith. *See* FED. R. EVID. 803(2). Although the passage of a specific amount of time is not necessarily dispositive under the excited utterance exception, in this instance there is simply no indication that the statement was a product of spontaneity or excitement instead of reflective or deliberative thought. *See* FED. R. EVID. 803(2) Advisory Committee Notes; *United States v. Hefferon*, 314 F.3d 211, 222 (5th Cir. 2002); *United States v. Jackson*, 204 F.3d 1118, n.46 (5th Cir. 1999). Finally, the Court notes that the statement is also inadmissible under the residual exception of Rule 807 because the statement lacks "equivalent circumstantial guarantees of trustworthiness" which is the "lodestar of the residual hearsay exception analysis." *United States v. El-Mezain*, 664 F.3d 467, 498 (5th Cir.), *as revised* (Dec. 27, 2011) (citing *United States v. Walker*, 410 F.3d 754, 758 (5th Cir. 2005)).

For all of these reasons, the Court finds that the Smith Affidavit lies well outside the boundaries of admissibility, and the Court will not consider the affidavit as part of its summary judgment analysis.

*Excessive Force*

To bring a § 1983 excessive force claim under the Fourth Amendment, a plaintiff must show that he "suffered (1) an injury that (2) resulted directly and only from the use of force that was excessive to the need and that (3) the force used was objectively unreasonable." *Hamilton v. Kindred*, 845 F.3d 659, 662 (5th Cir. 2017) (citing *Flores v. Palacios*, 381 F.3d 391, 396 (5th Cir. 2004)). Defendant Cook argues that the Plaintiffs cannot establish an excessive force claim, and that he is entitled to the protection of qualified immunity.

Qualified immunity protects government officials from liability for civil damages to the extent that their conduct is objectively reasonable in light of clearly established law. *Crostley v. Lamar Cty., Texas*, 717 F.3d 410, 422-24 (5th Cir. 2013) (citing *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S. Ct. 2727, 73 L. Ed. 2d 396 (1982); *Kinney v. Weaver*, 367 F.3d 337, 346 (5th Cir. 2004)). "Qualified immunity gives government officials breathing room to make reasonable but mistaken judgments,' and 'protects all but the plainly incompetent or those who knowingly violate the law.'" *Davidson v. City of Stafford, Texas*, 848 F.3d 384, 391 (5th Cir.), *as revised* (Mar. 31, 2017) (quoting *Messerschmidt v. Millender*, 565 U.S. 535, 546, 132 S. Ct. 1235, 182 L. Ed. 2d 47 (2012); *Ashcroft v. al–Kidd*, 563 U.S. 731, 743, 131 S. Ct. 2074, 179 L. Ed. 2d 1149 (2011)). As noted above, the usual summary judgment burden of proof is altered in the case of a qualified immunity defense. *Orr*, 844 F.3d at 490.

"A plaintiff can overcome a qualified immunity defense by showing (1) that the official violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the

7

time of the challenged conduct." *Allen v. Cisneros*, 815 F.3d 239, 244 (5th Cir. 2016) (quoting *al–Kidd*, 563 U.S. at 735, 131 S. Ct. 2074; *Harlow*, 457 U.S. at 818, 102 S. Ct. 2727). In excessive force cases, "the second prong of the analysis is better understood as two separate inquiries: whether the allegedly violated constitutional rights were clearly established at the time of the incident; and, if so, whether the conduct of the defendants was objectively unreasonable in light of that then clearly established law." *Griggs v. Brewer*, 841 F.3d 308, 313 (5th Cir. 2016) (citing *Tarver v. City of Edna*, 410 F.3d 745, 750 (5th Cir. 2005) (citations and quotations omitted).

Indeed, the relevant inquiry is "whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." *Id*. at 312 (citing *Poole v. City of Shreveport*, 691 F.3d 624, 627 (5th Cir. 2012) (quoting *Graham v. Connor*, 490 U.S. 386, 398, 109 S. Ct. 1865, 104 L. Ed. 2d 443 (1989)). The use of force must be evaluated "from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Id*. Whether a particular use of force was "objectively reasonable" depends on several factors, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight. *Griggs*, 841 F.3d at 312 (citing *Deville v. Marcantel*, 567 F.3d 156, 167 (5th Cir. 2009); *Graham*, 490 U.S. at 396, 109 S. Ct. 1865). "If officers of reasonable competence could disagree as to whether the plaintiff's rights were violated, the officer's qualified immunity remains intact." *Griggs*, 841 F.3d at 313 (citing *Tarver*, 410 F.3d at 750.

In this case, there were two applications of force: (1) Cook sending the K9 Officer into the crawlspace after Shumpert, and (2) Cook shooting Shumpert.

8

*K9 and Excessive Force*

The Plaintiffs' excessive force claim as to Cook's application of force through the K9 Officer fails due to a complete lack of evidence on the first two elements of the claim: injury and causation. *See Hamilton*, 845 F.3d at 662; *Flores*, 381 F.3d at 396. There is no evidence in the record that Shumpert sustained an injury attributable to the K9, Alec. There are multiple medical records, pathological reports, and expert medical reports in the record, none of which, including the Plaintiffs' own medical expert report, reference any injury related to a dog bite or other injury ascribed to Alec.

Even if the Plaintiffs were able to establish injury and causation, they failed to meet their summary judgment burden on qualified immunity with regard to Cook's deployment of Alec. As noted above, the Plaintiffs have the burden of "establishing that [Cook's] allegedly wrongful conduct violated clearly established law," and demonstrating "genuine issues of material fact regarding the reasonableness of the [Cook's] conduct." *Wolfe*, 566 F. App'x at 354 ; *Michalik*, 422 F.3d at 262; *Bazan*, 246 F.3d at 489.

The Plaintiffs rely solely on *Cooper v. Brown*, 844 F.3d 517 (5th Cir. 2016), to establish both prongs of their qualified immunity argument. In *Cooper*, an individual stopped on suspicion of driving under the influence fled the scene and hid in a small wood-fenced area. *Id*. at 521. A K9 officer located the suspect, and upon discovery, the K9 bit the suspect on the calf and held on. *See id*. The K9 continued to bite and hold the suspect for two minutes until the officer had handcuffed the suspect and had him in custody. *See id*. The suspect suffered significant injures to his lower leg, enduring years of severe pain, and requiring multiple surgeries. *See id*. It was undisputed that the suspect complied with all of the officer's commands, never resisted, kept both of his hands in view so that the officer was assured that he was unarmed, and did not fight the dog. *See id*.

Applying the factors from *Graham*, the Fifth Circuit found that "under the facts in this record, permitting a dog to continue biting a compliant and non-threatening arrestee is objectively unreasonable. *Id*. at 524. The *Cooper* Court went on to find that the officer was not entitled to qualified immunity because the officer had "fair warning" that subjecting a "compliant and non-threatening arrestee" to excessive force, regardless of the instrumentality,[4] was a clearly established constitutional violation. *See id*.

The facts of the instant case are readily distinguishable from *Cooper*. Unlike the suspect in *Cooper*, Shumpert did not comply with Cook's commands, continued to resist and flee, and fought back against the dog. Looking to the factors outlined in *Graham*, severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight, the Court finds that the first factor, severity of the crime, weighs in Shumpert's favor. Although the officers initially followed Shumpert on suspicion of drug activity, the stop was initiated for a minor traffic violation.[5] Shumpert did escalate the situation by refusing to stop. The second *Graham* factor weighs in favor of qualified immunity. Based on the record, a reasonable officer in Cook's position could have believed Shumpert was an immediate threat. It was unclear whether the crawlspace had another exit or access to the interior of the house, and Shumpert was fleeing further under the building. Under these circumstances, it was reasonable for reasonable officer in Cook's position to believe that Shumpert did pose an immediate threat to Cook, other officers in the area, and to the potential

---

[4] The district court found the right "clearly established" through the *Hope* exception, reasoning that although there was a lack of "robust consensus" among appellate courts on these particular facts, the constitutional violation was so "obvious" that it fell within the exception outlined by the Supreme Court in *Hope v. Pelzer*, 536 U.S. 730, 122 S. Ct. 2508, 153 L. Ed. 2d 666 (2002). *Cooper v. Brown*, 156 F. Supp. 3d 818, 821 (N.D. Miss., 2016). The Fifth Circuit affirmed but did not apply the *Hope* exception, instead finding the right clearly established through other cases involving applications of excessive force through means other than dog bites. *Cooper*, 844 F.3d at 524-26.

[5] The Defendants also argue that Shumpert committed misdemeanor crimes of Disorderly Conduct MISS. CODE ANN. § 97-35-7, Resisting Lawful Arrest, MISS. CODE ANN. § 97-9-73, and the felony of Burglary of a Dwelling, MISS. CODE ANN. § 97-17-23. The Plaintiffs do not respond to this argument.

occupants of the house. The third and final *Graham* factor weighs heavily in favor of qualified immunity. Contrary to the Plaintiffs' assertions, the situation was not stagnant. Shumpert refused to comply with Cook's commands and continued to actively flee, evade, and then fight the K9 Officer. Under these factors, the Plaintiffs failed to show that Cook's decision to deploy Alec was objectively unreasonable.

In addition, the Court finds the *Cooper* decision inadequate to meet the "clearly established" prong of the qualified immunity inquiry. The *Cooper* Court relied heavily on the fact that the suspect in that case did not attempt to resist or flee in any way noting, "Our caselaw makes certain that once an arrestee stops resisting, the degree of force an officer can employ is reduced." *Cooper*, 844 F.3d at 524. The factual distinctions in this case fail to meet the requisite standard of placing "the statutory or constitutional question *beyond debate*." *Id*. (citing *Morgan v. Swanson*, 659 F.3d 359, 371-72 (5th Cir. 2011) (en banc) (quoting *al–Kidd*, 563 U.S. at 741, 131 S. Ct. 2074)).

The Plaintiffs also argue that Cook deviated from Tupelo Police Department operating procedures when he chose to deploy Alec, and that this establishes a constitutional violation. The Plaintiffs argue that under Department procedure Cook should not have used Alec to locate Shumpert in the first place because Shumpert was not a violent offender, that Cook should have waited for backup, that Cook should have had supervisor clearance before deploying Alec, and that deploying Alec violated the barricade policy. The essence of the Plaintiffs argument is that Cook violated department policy and that this is a *per se* constitutional violation, or at least evidence of a constitutional violation. The Plaintiffs do not cite a single case in support of this argument, nor have they brought forth any evidence or expert testimony to support their contention that Cook violated specific policies. The Defendants' witnesses, officers, experts and the

11

Departments 30(b)(6) designee uniformly agree that Cook did not violate any applicable policy. In any event, this argument by the Plaintiffs is only marginally applicable here.

The correct framework under which Cook's actions must be judged is not a subjective one viewed in the clear unobstructed retrospection of hindsight and application of Department policy. The correct standard is an objective one. "The use of force must be evaluated "from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Griggs*, 841 F.3d at 312 (citing *Poole*, 691 F.3d at 627; *Graham*, 490 U.S. at 398, 109 S. Ct. 1865). "'Qualified immunity' gives government officials breathing room to make reasonable but mistaken judgments,' and 'protects all but the plainly incompetent or those who *knowingly* violate the *law*.'" *Davidson*, 848 F.3d at 391 (quoting *Messerschmidt*, 565 U.S. at 546, 132 S. Ct. 1235; *al–Kidd*, 563 U.S. at 743, 131 S. Ct. 2074) (emphasis added).

As to Cook's decision to deploy Alec, the Plaintiffs failed to establish essential elements of their excessive force claim, injury and causation, and failed to carry their burden on both prongs of qualified immunity. *See Hamilton*, 845 F.3d at 662 (citing *Flores*, 381 F.3d at 396); *Allen*, 815 F.3d at 244 (quoting *al–Kidd*, 563 U.S. at 735, 131 S. Ct. 2074; *Harlow*, 457 U.S. at 818, 102 S. Ct. 2727). Because there is no evidence in the record that Shumpert sustained any injury that resulted directly from Cook's decision to deploy Alec, and because the Plaintiffs failed to establish that Cook's decision to deploy Alec was objectively unreasonable in light of clearly established law, Cook is entitled to qualified immunity on this issue. *See Hamilton*, 845 F.3d at 662 (citing *Flores*, 381 F.3d at 396); *Griggs*, 841 F.3d at 313 (citing *Tarver*, 410 F.3d at 750); *Graham*, 490 U.S. at 398, 109 S. Ct. 1865.

*Deadly Force*

Turning to Cook's use of deadly force, the application of the controlling precedent yields a similar result. As noted above, whether a particular use of force was "objectively reasonable" depends on several factors, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight. *Deville*, 567 F.3d at 167 (quoting *Graham*, 490 U.S. at 396, 109 S. Ct. 1865).

As Shumpert emerged from the crawlspace and tackled Cook, the two were actively engaged in a fight with both landing blows on the other. Based on the record, Shumpert was on top of him beating him in the face, he struck back at Shumpert with his left hand and his gun, and only started firing when he started to lose consciousness. Under these facts, all three *Graham* factors favor qualified immunity. *See id*.

Moreover, "An officer's use of deadly force is not excessive, and thus no constitutional violation occurs, when the officer reasonably believes that the suspect poses a threat of serious harm to the officer or to others." *Mendez v. Poitevent*, 823 F.3d 326, 331 (5th Cir. 2016) (citing *Manis v. Lawson*, 585 F.3d 839, 843 (5th Cir. 2009)). "This is an objective standard: The question is not whether the officer actually believed that the suspect posed a threat of serious harm but whether a 'competent officer could have believed' as much." *Id*. (citing *City & Cty. of San Francisco v. Sheehan*, – U.S. –, 135 S. Ct. 1765, 191 L. Ed. 2d 856 (2015)); *see also Anderson v. Creighton*, 483 U.S. 635, 641, 107 S. Ct. 3034, 97 L. Ed. 2d 523 (1987) (explaining the objective nature of the inquiry).

Under the facts and circumstances particular to this case, a competent officer could have believed that Shumpert posed a threat of serious harm. The facts of *Mendez* are strikingly similar

13

to those of the instant case. The officer in *Mendez* was engaged in a physical fight with a suspect. After being struck on the temple and starting to lose consciousness, the officer fired two shots killing the suspect. The *Mendez* Court found that use of force objectively reasonable even though the suspect in that case had started to flee the scene and was approximately fifteen feet away when the officer fired. *Id*. at 334. The *Mendez* Court found that a reasonable officer confronted with that situation could have believed that the suspect "posed a threat of serious harm, justifying the use of deadly force." *Id*. This Court reaches the same conclusion based on the facts presented in this case. Cook and Shumpert were engaged in a serious physical fight, both landing physical blows on the other. As Cook was starting to lose consciousness, fearing for his own safety, he fired four successive shots, at least three of which it is undisputed were fired when Shumpert was on top of him.

The Plaintiffs rely on *Tolan v. Cotton*, – U.S. – 134 S. Ct. 1861, 1863, 188 L. Ed. 2d 895 (2014) to support their argument that there are genuine disputes of material fact preventing summary judgment on this issue.[6] In *Tolan*, the Supreme Court reversed the Fifth Circuit's grant of qualified immunity because "the Fifth Circuit failed to adhere to the axiom that in ruling on a motion for summary judgment, "[t]he evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor." *Id*., 188 L. Ed. 2d 895 (citing *Liberty Lobby*, 477 U.S. at 255, 106 S. Ct. 2505). In that case, a police officer shot an unarmed man (Tolan) on his parent's porch approximately twenty feet away. *Id*. The Fifth Circuit held that "even if [the officer's] conduct did violate the Fourth Amendment, [he] was entitled to qualified immunity because he did not violate a clearly established right. *Id*., 188 L. Ed. 2d 895 (citing *Tolan v. Cotton*,

---

[6] The Plaintiffs also rely on Department policy that states, "deadly force may not be used to apprehend an unarmed, non-dangerous suspect, even one suspected of committing a felony." The Court discusses the inapplicability of the Plaintiffs' policy arguments above. Even so, the Plaintiffs' bare assertion that this policy is applicable under these facts is unsupported by evidence in the record.

14

713 F.3d 299, 306 (5th Cir. 2013), *cert. granted, judgment vacated,* 134 S. Ct. 1861, 188 L. Ed. 2d 895 (2014), and *aff'd in part, vacated in part, remanded*, 573 F. App'x 330 (5th Cir. 2014)). The Supreme Court found that the Fifth Circuit had inappropriately construed facts in the movant's favor. In particular, the Supreme Court found that there was conflicting testimony given by the officer and Tolan, Tolan's mother, Tolan's father, and another officer present at the scene, and that the Fifth Circuit credited the officer's testimony over that of the other witnesses. *Id*. at 1865, 188 L. Ed. 2d 895.

This Court is well aware of its duty to resolve factual controversies "in favor of the Plaintiff when both parties submitted evidence of contradictory facts." *Little*, 37 F.3d at 1075. This does not mean that the Plaintiffs can "rest on conclusory allegations and assertions." Instead, they "must demonstrate genuine issues of material fact regarding the reasonableness of the officer's conduct." *Wolfe*, 566 F. App'x at 354 (citing *Michalik*, 422 F.3d at 262); *Bazan*, 246 F.3d at 489. The Court has resolved all factual controversies in the Plaintiffs' favor, when there is evidence of contradictory facts. The facts and testimony in this case are simply not disputed to an extent anywhere near that presented in *Tolan*, especially with regard to eyewitness testimony.

Instead, the Plaintiffs argue that physical evidence creates a question of fact on a key element of Cook's version of events. In support of this assertion, the Plaintiffs rely on the report of their medical expert that states, "Although it is unclear the body position during the shootings, most likely the shooter is on top of Mr. Shumpert for at least one of the gunshot wounds (Wound D) [to Shumpert's groin area]. This opinion is based upon the steep trajectory and location of the wound track." Setting aside issues of admissibility, certainty, and the lack of scientific basis and methodology in this report, the Plaintiffs' assertion, taken as true is not dispositive here, nor does it raise a genuine dispute of material fact on the ultimate issue of whether Cook's use of force was

15

objectively reasonable. Indeed, the Plaintiffs expert's conclusions are generally consistent with the struggle between Cook and Shumpert. Moreover, it is undisputed, and corroborated by several different witness accounts including that of Foster that Cook fired his shots in quick succession without a delay or lag in between each one. In addition, the Supreme Court has found that, in some cases involving as many as fifteen shots, if the initial firing at a suspect is justified, "the officers need not stop shooting until the threat has ended." *Plumhoff v. Rickard*, – U.S. –, 134 S. Ct. 2012, 2022, 188 L. Ed. 2d 1056 (2014).

The Court is mindful of its obligation to not weigh credibility at the summary judgment stage. Although the Plaintiffs do not attack Cook's credibility, his version of events is the only one cited in the record, as the only other witness to these events is deceased. The fact that Cook's version is the only one we have does not *per se* cast doubts on its veracity. *See Ontiveros v. City of Rosenberg, Tex.*, 564 F.3d 379, 383 (5th Cir. 2009). As noted above, the standard by which Cook's actions must be judged is one of objective reasonableness, "in light of the facts and circumstances confronting [the officer], without regard to [the officer's] underlying intent or motivation," and the Plaintiffs "may not defeat summary judgment by merely asserting that the jury might, and legally could, disbelieve the defendant [ ]." *Graham*, 490 U.S. at 396–97, 109 S. Ct. 1865; *Liberty Lobby*, 477 U.S. at 252, 106 S. Ct. 2505.

Even in cases in which the defendant law enforcement officer is the only person offering an account of his actions, the officer's actions, if not controverted by other competing material evidence in the record, may still be found to be reasonable, and that officer's account may suffice to grant qualified immunity. *See Ontiveros*, 564 F.3d at 383; *see also LaFrenier v. Kinirey*, 550 F.3d 166, 169 (1st Cir. 2008) (noting that the plaintiff must put material facts in dispute even where the movant relies on the testimony of an interested witness; "[t]he Fifth Circuit has . . . refused to

16

allow a nonmovant to defeat summary judgment where, as here, he or she 'points to nothing in the summary judgment record that casts doubt on the veracity of the [witness's] version of the events."). In other words, the Plaintiffs must offer or point to evidence that contradicts or undermines Cook's account; skepticism is insufficient. *See Ontiveros,* 564 F.3d at 383 (upholding as reasonable police officer's conduct when he was the only witness to the shooting); *see also*, *Aujla v. Hinds Cty., Mississippi*, 61 F. App'x 917 (5th Cir. 2003) (affirming grant of qualified immunity when plaintiff points to nothing in the summary judgment record that casts doubt on the veracity of the deputies' version of the events.)

When reviewing the reasonableness of an officer's conduct the Court must "allo[w] for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation." *Plumhoff*, 134 S. Ct. at 2020, 188 L. Ed. 2d 1056 (citing *Graham*, 490 U.S. at 396–97, 109 S. Ct. 1865). The facts of this case presented exactly these circumstances. The Court finds that Cook's actions were "'objectively reasonable' in light of the facts and circumstances confronting [him]." *Griggs*, 841 F.3d at 312 (citing *Poole*, 691 F.3d at 627 (quoting *Graham*, 490 U.S. at 398, 109 S. Ct. 1865).

In addition, the Court finds that under Supreme Court and Fifth Circuit precedent, it is not a violation of a clearly established Fourth Amendment right for an officer to shoot a suspect when it was reasonable for an officer to believe that a suspect posed a serious and immediate threat. *See Hatcher v. Bement*, 676 F. App'x 238, 244 (5th Cir. 2017) (gathering cases).

The Plaintiffs failed to overcome Cook's qualified immunity defense "by showing (1) that the official violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct." *Allen*, 815 F.3d at 244 (quoting *al–Kidd*, 563

U.S. at 735, 131 S. Ct. 2074; *Harlow*, 457 U.S. at 818, 102 S. Ct. 2727). The Plaintiffs also failed to raise a question of fact as to whether the "allegedly violated constitutional rights were clearly established at the time of the incident; and, if so, whether the conduct of the defendants was objectively unreasonable in light of that then clearly established law." *Griggs*, 841 F.3d at, 313 (citing *Tarver*, 410 F.3d at 750). Because "officers of reasonable competence could disagree as to whether the plaintiff's rights were violated, [Cooks's] qualified immunity remains intact." *Id*.

Although the Court finds above that Cook is entitled to the protection of qualified immunity for the discrete uses of force for both the deployment of Alec, and for his use of deadly force, the Court also finds that viewing these discrete uses of force together in the totality of the circumstances, Cook is entitled to the protection of qualified immunity. The thrust of the Plaintiffs' arguments in this case urge the Court to apply a subjective standard; that given the circumstances presented to Cook on that night in June of 2016, there were other choices Cook could have made, and perhaps more well considered decisions that could have led to a different outcome here, preferably an outcome where Shumpert lived. This argument is not lost on this Court, but it is simply not the legal standard that clear precedent binds this Court to apply. The Court has applied the facts and evidence to the law, and the outcome is clear, Cook's actions, even if they may not be beyond all bounds of criticism and reproach, fall well within the bounds prescribed by the qualified immunity doctrine. As such, Cook is entitled to its protection.

*State Law Claims*

Finally, the Plaintiffs assert several state law claims against Cook including civil assault and battery, general negligence, and intentional infliction of emotional distress, and wrongful death. Cook asserts exemption from liability under Mississippi Code §11-46-9(1)(c). The Mississippi Tort Claims Act provides a qualified waiver of sovereign immunity under Mississippi

law for certain tortious acts by municipal employees. The Act does not waive sovereign immunity for:

> any act or omission of an employee of a governmental entity engaged in the performance or execution of duties or activities relating to police or fire protection unless the employee acted in reckless disregard of the safety and well-being of any person not engaged in criminal activity at the time of injury;

MISS. CODE. ANN. § 11-46-9(1)(c).

Cook argues that he is exempt from liability because Shumpert was actively engaged in criminal activity at the relevant time. The Plaintiffs do not respond to this argument but instead argue that Cook acted with reckless disregard. Under the plain language of the statute, whether Cook acted with reckless disregard is irrelevant because, as the Plaintiffs at least tacitly agree, Shumpert was engaged in criminal activity. *See id.*; *see also Hancock v. City of Greenwood, Miss.*, 942 F. Supp. 2d 624, 626 (N.D. Miss. 2013) (citing *Chapman v. City of Quitman*, 954 So. 2d 468, 474 (Miss. Ct. App. 2007); *Williams v. City of Cleveland, Miss.*, No. 2:10-CV-215-SA, 2012 WL 3614418, at *20 (N.D. Miss. Aug. 21, 2012), *aff'd*, 736 F.3d 684 (5th Cir. 2013) (citing *City of Jackson v. Powell*, 917 So. 2d 59, 69–70 (Miss. 2005)). The application of this Code section is therefore straightforward to these facts and Cook is exempt from liability.

*Conclusion*

Because the Plaintiffs failed to establish several essential elements of their claims, as fully explained above, and Cook is entitled to the protections of qualified immunity and immunity under the MTCA, Cook's Motion for Summary Judgment [190] on all of the Plaintiffs' claims is GRANTED. All of the Plaintiffs' claims against Cook are DISMISSED with prejudice. Because all of the Plaintiffs' claims against the City of Tupelo, as well as their official capacity claims

19

against Shelton, Aguirre, and Cook were previously dismissed by other orders of this Court, there are no remaining claims. All claims are DISMISSED with prejudice, and this CASE is CLOSED.

SO ORDERED, on this the 6th day of November, 2017.

/s/ Sharion Aycock
UNITED STATES DISTRICT JUDGE